IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION NO. 3:24-cr-00016-TES |
| DWAN MAURICE HEWLETT, | |
| *Defendant*. | |

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND
MOTION TO COMPEL

Before the Court are Defendant Dwan Maurice Hewlett's Motion to Suppress
Evidence [Doc. 28] and Motion to Reveal the Deal and to Reveal the Identity of its
Confidential Source ("Motion to Compel") [Doc. 29]. The Court held a hearing on
October 7, 2024, denied both Motions, and now memorializes its oral rulings here. *See*
[Doc. 38]. As explained in further detail below, the Court **DENIES** Defendant's Motion
to Suppress [Doc. 28] and Motion to Compel [Doc. 29].

## BACKGROUND

The Northeast Georgia Regional Drug Task Force, in collaboration with the
Athens-Clarke County Police Department Gang Unit, initiated an operation on
December 20, 2023, targeting Mr. Hewlett. [Doc. 28, pp. 1–2]; [Doc. 29, p. 2]; [Doc. 33,
pp. 1–2]. The investigation began after a confidential source (CS) provided Detective
Beau Holcombe with information identifying Hewlett, also known as "LA," as an active

Fentanyl dealer in Athens, Georgia. [Doc. 33, p. 1]. The CS agreed to arrange a drug purchase and informed law enforcement that Hewlett would arrive at a BP gas station on Danielsville Road in Athens, driving a green Honda Civic bearing the Georgia license plate SDT1846, and would be in possession of illegal narcotics. [*Id.* at pp. 1–2]; [Doc. 28, pp. 1–2]; [Doc. 29, p. 2]. The CS also stated that she had directly observed Hewlett selling fentanyl in the past, and she speculated that Hewlett might be armed. [Doc. 33, p. 2].

Based on this information, the police officers developed a plan to intercept Hewlett at the BP gas station. [*Id.* at p. 2]. In the presence of Detective Holcombe, the CS placed several phone calls to Hewett to arrange the deal, and within an hour of the CS's last phone call, law enforcement observed a green Honda Civic matching the description provided by the CS arrive at the gas station. [*Id.*]. From a nearby unmarked vehicle, the CS positively identified Hewlett as the driver. [*Id.* at p. 3].

To prevent Hewlett from fleeing or using his vehicle as a weapon, police officers executed a "vehicle pin maneuver," striking Mr. Hewlett's car with unmarked vehicles and blocking it in from the front and rear. [*Id.*]; [Doc. 28, p. 3]. They then activated their emergency lights, exited their vehicles in tactical gear with "POLICE" markings, and, firearms drawn, ordered Hewlett to exit the vehicle. [Doc. 28, pp. 2–3]; [Doc. 33, p. 3].

Instead of complying, Hewlett fled on foot across Danielsville Road. [Doc. 28, p. 4]; [Doc. 33, p. 4]. However, he tripped and fell in the middle of the road, and as he was

getting back to his feet, Sergeant McFaddin tackled him, bringing the brief foot chase to an abrupt end. [Doc. 28, p. 4]; [Doc. 33, p. 4].

After securing Hewlett, law enforcement turned their attention to the Honda Civic. [Doc. 28, p. 4]; [Doc. 33, p. 5]. Officers spotted a digital scale, a common tool associated with drug trafficking, in plain view on the floorboard. [Doc. 28, p. 4]; [Doc. 33, p. 5]. Then, without obtaining a warrant or receiving consent from the vehicle's registered owner, Kewanda Smith, the officers searched the vehicle and discovered additional evidence. [Doc. 28, p. 4]; [Doc. 33, pp. 5–6].

According to the Government, they found a Taurus handgun under the driver's seat and two black bags on the rear passenger floorboard containing narcotics. [Doc. 28, p. 4]; [Doc. 33, p. 5]. The Government claims that they recovered 144 grams of fentanyl, 58 grams of methamphetamine, 16 grams of crack cocaine, and 9 grams of powder cocaine. [Doc. 33, p. 5]. In addition to the drugs and gun, the officers seized two cell phones—a Nokia and an Apple iPhone—from the vehicle. [Doc. 28, p. 4]; [Doc. 33, p. 7]. In a post-*Miranda* interview conducted by Detective Holcombe, Hewlett claimed that he had merely borrowed the car to drive to the store and was unaware of the presence of drugs or guns in the vehicle. [Doc. 28, p. 4]; [Doc. 33, p. 7].

The Grand Jury returned a four-count Indictment [Doc. 1] in May 2024, charging Hewlett with conspiracy to possess with intent to distribute methamphetamine, fentanyl, and cocaine, as well as other related charges, including possession of a firearm

3

in furtherance of a drug trafficking offense. Hewlett pled "not guilty" at his arraignment on June 18, 2024, and was detained pending trial. [Doc. 13]; [Doc. 14]; [Doc. 17].

## MOTION TO SUPPRESS

Hewlett filed this Motion to Suppress on September 19, 2024, seeking to exclude all evidence obtained from the vehicle and cellphones. [Doc. 28].

### A.    Legal Standard

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. A warrantless arrest is reasonable if an officer "has sufficient knowledge, based on reasonably trustworthy information, for a prudent person to believe that the suspect has committed or is committing an offense." *United States v. Harrell*, 603 F. App'x 877, 879 (11th Cir. 2015); *see Maryland v. Pringle*, 540 U.S. 366, 370 (2003). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). Furthermore, this test is an objective one that "depends on the totality of the circumstances." *Pringle*, 540 U.S. at 371; *see, e.g., Whren v. United States*, 517 U.S. 806, 813 (1996) ("[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

The movant bears the initial burden of persuading the court, through specific factual allegations and supporting evidence, that the evidence should be suppressed. *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977).[1] Once the movant establishes a basis for the motion, the burden then shifts to the Government to prove by a preponderance of the evidence that the search or seizure of evidence was legally and factually justified. *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (citation omitted) ("Upon a motion to suppress evidence garnered through a warrantless search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution. The Government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the [F]ourth [A]mendment."); *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) (citation omitted) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof beyond a preponderance of the evidence.").

**B.**    **Discussion**

Hewlett moves to suppress all evidence seized by law enforcement on the grounds that his warrantless arrest was without probable cause and the search of the

---

[1] "[T]he decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for [the court of appeals], the district courts, and the bankruptcy courts . . . ." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Nokia cellphone violated the search warrant's temporal limitations and scope. [Doc. 28]. The Government contends that Hewlett's arrest and the search of his vehicle were supported by probable cause, Hewlett's flight from the vehicle extinguished any reasonable expectation of privacy in the vehicle and its contents, and the data from the Nokia cellphone is admissible even though it was downloaded after the warrant's execution period expired. [Doc. 33, pp. 5, 7–8].

### 1.    Probable Cause

First, Hewlett argues that the Government's evidence should be suppressed because it is the product of an arrest unsupported by probable cause. [Doc. 28, p. 5]. He contends that the record contains no evidence supporting a finding that the CS was reliable or that the information they provided was credible, making their tip insufficient to establish probable cause for his arrest. [*Id.* at p. 6]. The Government counters that the CS provided reliable information, which law enforcement independently corroborated. [Doc. 33, pp. 7–10, 13–14].

In the Eleventh Circuit, to determine whether a confidential informant's statement is sufficient to establish probable cause, courts analyze the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge, as well as any independent corroboration of the tip by police work. *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). It is undisputed that the CS in this case was untested on the day of Hewlett's arrest, and thus the Court finds that the CS was not reliable (in the

legal sense of the word) at that time. *See Ortega*, 85 F.3d at 1525. However, other circumstances surrounding Hewlett's arrest more than make up the difference.

The veracity of the information, which was based on the CS's personal observations, was flawless in this case, and no evidence in the record suggests otherwise. *See* [Doc. 33, pp. 13–14]. The CS predicted when Hewlett would arrive at the BP gas station on Danielsville Road and gave law enforcement a description and tag number for the vehicle he would be driving. *See* [Doc. 28, pp. 1–2]; [Doc. 29, p. 2]; [Doc. 33, pp. 1–2].

Additionally, law enforcement officers corroborated the key details of the CS's information, other than whether Hewlett had narcotics with him, before they arrested Hewlett. At the hearing, Detective Holcombe testified that he confirmed the CS's tip about Hewlett's vehicle the day before the arrest by locating and surveilling the car and verifying that Hewlett was the driver. The Task Force officers further corroborated the CS's predictive information when they observed Hewlett arrive at the gas station as the CS had described: he was where the CS said he would be, at the time the CS had predicted, and driving the exact car the CS had identified.

Defense counsel attempted to impeach Detective Holcombe with his own prior testimony before another judge, where he testified that the CS was deemed reliable at the time of Mr. Hewlett's arrest. Detective Holcombe clarified that he considered the CS reliable as of the day of his prior testimony, explaining that the CS had established their

7

reliability by providing additional information leading to other arrests after Hewlett's. As the Court noted, Detective Holcombe's characterization of the CS as "reliable" on the date of the hearing doesn't carry the day. The Court clearly ruled that regardless of how Detective Holcombe answered that question, the CS was "untested" and could not be considered "reliable" in the legal sense. The Court easily concludes that Detective Holcombe fully knew the context and spirit of counsel's question. To put it bluntly, his answer was simply too clever by half. And, while the Court finds that particular portion of his testimony as unworthy of credence, the Court exercises its considerable discretion to find the remaining portions of Detective Holcombe's testimony credible.

Given the CS's veracity, the personal observations and interactions that formed the basis of their information, the highly accurate nature of the information provided and the independent corroboration by law enforcement, the Court finds the CS's tip more than sufficient to establish probable cause for Hewlett's arrest. *See Ortega*, 85 F.3d at 1525. As Hewlett has not met his burden of persuading the Court to suppress evidence seized during his arrest, the burden does not shift to the Government, and the Court does not address the issue of abandonment. *See de la Fuente*, 548 F.2d at 533. Accordingly, the Court **DENIES** Defendant's Motion to Suppress [Doc. 28] the evidence seized during his arrest.

### 2.    Cell Phones

Second, Hewlett moves to suppress the data collected from the Nokie cellphone

8

on the grounds that "the search warrant . . . was not executed timely and that law enforcement exceeded the scope of the search authorized by the search warrant, all in violation of [Hewlett's] constitutional rights." [Doc. 28, pp. 7–8]. Hewlett argues that the officers waited to execute the search warrant until January 25, 2024, nearly a full month outside of the 10-day window allowed by the search warrant. [*Id.* at p. 7]. He also argues that law enforcement exceeded the scope of the search warrant by extracting data and information from outside of the date range authorized by the search warrant and, without providing any details, that "the Nokia cellular telephone may have been improperly extracted, potentially excluding relevant evidence in this case." [*Id.* at p. 5]. The Government responds that "Detective Prah made a good faith effort to comply with the search warrant as evidenced by the fact that he set the Cellebrite search filter restrictions for the same date range specified in the warrant." [Doc. 33, pp. 14–15, 18].

In the Eleventh Circuit, a search may be timely even if it is completed after the expiration of the warrant, if those actions are a continuation of a search that was initiated before the warrant expired and the delay is reasonably justified. *See United States v. Gerber*, 994 F.2d 1556 (11th Cir. 1993) (holding that a search three days after the search warrant's execution period expired was still timely, where FBI agents began a timely search of the car but were unable to open the hood, and continued the search three days later with the help of a mechanic, reasoning that the later action was a continuation of the original timely search). Although it does not appear that the

Eleventh Circuit has passed on this exact question, "other circuit courts generally hold that a search of a password-protected phone complies with Rule 41(e)(2)(A) so long as officers either seize the phone or take steps to extract the phone's data within" the search warrant's execution period. *United States v. White*, No. 4:22-CR-0017-WMR, 2023 WL 7703553, at *9 (N.D. Ga. Nov. 15, 2023) (Ray, J.) (collecting cases).

Athens-Clarke County Superior Court Judge Lawton Stephens issued a search warrant on December 21, 2023, authorizing the search of the cellphones seized in this case within 10 days and the extraction of data saved on the phones between June 20, 2023, and December 21, 2023. [Doc. 28, p. 4–5]; [Doc. 33, p. 7]. Detective Scott Prah testified at the hearing that he received the cellphones in the case a day or two after Hewlett's arrest and took them to the United States Secret Service office in Atlanta for examination on December 28, 2023. *See* [Doc. 33, p. 15]. Using a forensic examination tool known as Cellebrite, Detective Prah attempted three times that day to unlock the Nokia phone but was unsuccessful. *See id.* He returned on January 25, 2024, and was finally able to unlock the phone. According to Detective Prah, after copying all of the data stored on the phone, he filtered out any data from outside the date range specified in the warrant, as there is no way to limit Cellebrite to a specific date range. The Court observed Detective Prah and found him credible. As such, the Court finds that Detective Prah's attempts to access the Nokia phone on December 28, 2023, constituted an "execution" of the search warrant, that his later actions on January 25, 2024, were a

continuation of that search, and that the delay was reasonably justified. *See Gerber*, 994

F.2d 1556.

Even if the search violated the search warrant's temporal limitation, that does not

rise to the level of a Fourth Amendment violation in this case. "In contrast to the

Federal Rules of Criminal Procedure, the Fourth Amendment 'does not specify that

search warrants contain expiration dates' and 'contains no requirements about when

the search or seizure is to occur or the duration [thereof].'" *United States v. Nicholson*, 24

F.4th 1341, 1351 (11th Cir. 2022) (quoting *Gerber*, 994 F.2d at 1559). When law

enforcement officers "complete a search after the deadline in a warrant, the

constitutional question is whether the probable cause that justified the warrant went

stale or dissipated because of the delay." *Id.* (citing *Gerber*, 994 F.2d at 1560).

The circumstances providing the probable cause to search the information stored

on the Nokia cellphone did not dissipate, go stale, or change in any meaningful way by

January 25, 2024. *See, e.g., id.* (holding that the passage of over 100 days did not dissipate

probable cause that justified initial seizure of laptop); *United States v. Dixon*, No. 3:20-cr-

3-TCB, 2021 WL 1976679, at *2 (N.D. Ga. May 18, 2021) (denying motion to suppress,

reasoning that "the Government's two-year delay in searching [the defendant's] iPhone

was not unreasonable given that the phone was encrypted with a passcode and [the

defendant] had not provided the agents with his passcode); *United States v. Brewer*, 588

F.3d 1165, 1173 (8th Cir. 2009) (passage of several months does not dissipate probable

cause for searching "electronically-stored [sic] files in the custody of law enforcement."). For this reason, the probable cause that justified the initial search of the cellphone continued to justify the search after the warrant's execution period expired, and the Court finds that the delay between the seizure and search was not constitutionally unreasonable.

And even if the Government violated the search warrant's temporal limitation, suppression would only be required under Federal Rule of Criminal Procedure 41 if there was prejudice—i.e., if "the search might not have occurred or would not have been so abrasive if the rule had been followed"—or if there was "evidence of intentional and deliberate disregard of a provision in the Rule." *Nicholson*, 24 F.4th at 1351–52 (quoting *Gerber*, 994 F.2d at 1560); *see United States v. Cleveland*, 907 F.3d 423, 431 (6th Cir. 2018). Here, there is no evidence of prejudice or intentional disregard. Hewlett does not contend that there was prejudice under *Gerber*. *See* 994 F.2d 1556. Officers seized the cellphones when they arrested Hewlett and obtained a search warrant the following day. Complying with the warrant's execution period wouldn't have stopped law enforcement from conducting a digital forensic examination of the cellphones, nor would it have rendered that examination less intrusive. *See Nicholson*, 24 F.4th at 1351–52 (quoting *Gerber*, 994 F.2d at 1560). Moreover, there is no indication that law enforcement intentionally violated the warrant's timeline. *See id.*

Thus, the Court **DENIES** Defendant's Motion to Suppress [Doc. 28] the evidence

gathered from the Nokia cellphone, and again the Court finds it unnecessary to address the issue of abandonment.

## MOTION TO COMPEL

The day after he filed his Motion to Suppress, Hewlett filed his Motion to Compel. [Doc. 29].

### A.    Legal Standard

The Government may invoke "the informer's privilege" to withhold the identity of its informants from disclosure, a privilege rooted in encouraging citizens to freely share information about criminal activity with law enforcement. *Roviaro v. United States*, 353 U.S. 53, 59 (1957) (citations omitted). However, as the Supreme Court established in *Roviaro*, this privilege is not absolute. *See id.* at 62. "[I]n determining whether the government's privilege must give way to a defendant's right to prepare his defense, a court must engage in a balancing test, taking into account the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony." *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991) (citing *Roviaro*, 353 U.S. at 62).

The privilege ends where "the disclosure of an informer's identity, or of the contents of their communication, is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60–62 (citations omitted) (cleaned up). Courts in the Eleventh Circuit apply the *Roviaro* balancing test by

focusing on "three factors: (1) 'the extent of the informant's participation in the criminal activity'; (2) 'the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant'; and (3) 'the government's interest in nondisclosure.'" *United States v. Moore*, 611 F. App'x. 572, 575 (11th Cir. 2015) (quoting *United States v. Tenorio-Angel*, 756 F2d 1505, 1509 (11th Cir. 1985)); *see also United States v. Flores*, 572 F.3d 1254, 1265 (11th Cir. 2009).

**B.    Discussion**

Hewlett moves to compel the government to disclose the CS's identity, arguing that it is essential to the defense and is crucial for evaluating the case and ensuring a fair trial, particularly because the CS played a key role in setting up the events that led to his arrest. [Doc. 29]. The Government responds that "the CS's participation [in the criminal activity in this case] was slight," the information they provided was corroborated by independent police work, Hewlett fails to "establish or even address the importance of the [CS's] testimony to his defense," and maintaining confidentiality is crucial to protect informants and future operations. [Doc. 33, pp. 20–22].

**1.    Extent of CS's Involvement in the Criminal Activity**

First, Hewlett argues that "the CS played 'an active and crucial role in the events underlying' Mr. Hewlett's 'potential criminal liability.'" [Doc. 29, p. 4 (first citing *Suarez v. United States*, 582 F.2d 1007, 1011 (5th Cir. 1978); and then citing *United States v. Parikh*, 858 F.2d 688, 696 (11th Cir. 1988))]. The Government argues that "[a]lthough the

CS's act of placing calls to Hewlett and requesting drugs may have risen to a level greater than that of a mere 'tipster,' it certainly doesn't rise to the level of an active 'participant' where disclosure is required." [Doc. 33, p. 20].

Bright-line rules are nowhere to be found in this context, but this Circuit's decisions can be lumped into "three categories of cases":

> [In] cases such as *Roviaro* itself, in which the informant played an active and crucial role in the events underlying a defendant's potential criminal liability . . . , disclosure and production of the informant is in all likelihood required to ensure a fair trial. [In] cases in which the informant was not an active participant, but rather a mere tipster . . . disclosure of the informant's identity is not required by *Roviaro*. A third group of cases falls between these two extremes. In these cases, there is a distinct possibility that the defendant might benefit from disclosure, but the Government claims a compelling need to protect its informant. In cases such as these, disclosure is not necessarily required . . . .

*Suarez*, 582 F.2d at 1011 (citations omitted); *see Roviaro*, 353 U.S. at 60 ("We believe that no fixed rule with respect to disclosure is justifiable.").

Hewlett provides no authority supporting his argument that disclosure is required by the CS's involvement in this case. *See* [Doc. 29, pp. 4–5]; Fed. R. Evid. 501. He quotes two decisions, neither of which compelled the government to disclose an informant's identity and cites no cases with facts similar to this one where a court required disclosure. *See* [Doc. 29, p. 4 (first citing *Suarez*, 582 F.2d at 1011; and then citing *Parikh*, 858 F.2d at 696)].

There is no doubt that the CS was a "mere tipster" at first, when they provided information about Hewlett's alleged criminal activities. *See Suarez*, 582 F.2d at 1011.

Placing phone calls to arrange the deal and identifying Hewlett at the scene of his arrest moved the CS out of that category and into the "third group," but the Court agrees with the Government that "the CS's participation was slight" and "certainly doesn't rise to the level of an active 'participant' where disclosure is required." [Doc. 33, p. 20].

In *Roviaro*, for instance, the informant received drugs directly from the defendant, one-on-one—not counting the federal narcotics officer who had "secreted himself in the trunk of [the informant's] Cadillac." 353 U.S. at 56. The officer hiding in the trunk heard the informant's conversation with the defendant and watched the defendant get out of the car, "walk to a tree, pick up a package, and return toward the car." *Id.* at 57. But although law enforcement later determined that the package contained narcotics, it doesn't appear that either officer involved in the operation even saw the defendant hand the package to the defendant. *Id.* at 57–58. In other words, it seems that the informant was the only witness who could testify that the package containing the narcotics was the same package the defendant retrieved from beside the tree. The Supreme Court compelled the government to disclose the informant's identity, reasoning that because the informant was "the sole participant, other than the accused," in the transaction charged, the informant was "the only witness in a position to amplify or contradict the testimony of government witnesses," and there was evidence that, shortly after the defendant's arrest, "a government witness testified that [the informant] denied knowing [the defendant] or ever having seen him before." *Id.* at 64.

16

By contrast, in a case much closer to this one, the Eleventh Circuit held that the trial court acted within its discretion by finding "that the informant's overall participation" in a cocaine sale "was minimal" where "the informant was in attendance at each meeting between the [defendants] and [law enforcement] and was present when the [defendants] were arrested." *United States v. Kerris*, 748 F.2d 610, 614 (11th Cir. 1984); *see also United States v. Diaz*, 655 F.2d 580 (5th Cir. 1981) (denying motion to compel disclosure where the informant introduced undercover agent and then assumed the role of an observer); *United States v. Razz*, 240 F. App'x 844 (11th Cir. 2007) (holding that the government was not required to disclose the identity of an informant who was involved in controlled drug buys).

Contrary to Hewlett's assertions, unlike the informant in *Roviaro*, the CS here neither actively participated in the alleged crime nor directly witnessed it. *See* 353 U.S. at 56. While it's true that the CS set up the deal and identified Hewlett at the scene, it's not as if the CS retrieved the drugs from Hewlett then handed them to the officers, like in *Roviaro*, so the CS's testimony is not necessary to establish any element of any crime Hewlett is charged with. *See* 353 U.S. at 57–58. So the Government's case does not, as Hewlett suggests, "hinge on the information provided by the CS and the veracity of that CS." [Doc. 29, p. 5]. The Court finds that because the CS's involvement with the alleged crimes in this case was minimal, this factor weighs against compelling disclosure.

17

### 2. Relationship Between Defendant's Asserted Defense and the Probable Testimony of the CS

Second, Hewlett argues that his "case will also benefit from the information related to, and testimony provided by the CS," because "the CS possess[es] exculpatory information that is discoverable," but he doesn't explain why that would be. [*Id.* at p. 5]. He has yet to assert any defense—much less explain how the CS's "testimony 'would significantly aid in establishing [it]." *Moore*, 611 F. App'x at 575 (quoting *Gutierrez*, 931 F.2d at 1491); *Kerris*, 748 F.2d 610 (holding that the government need not disclose an informant's identity in narcotics case where the defendant merely claimed that information likely to be obtained from the informant would be relevant to the defense but presented no evidence to raise that defense); *see also United States v. Louis*, 233 F. App'x 933 (11th Cir. 2007) (holding that the government was not required to disclose the identity of an informant who arranged for a defendant to sell drugs to an undercover law enforcement agent where the defendant produced insufficient evidence to support his asserted defense of entrapment).

Hewlett implies that the CS's reliability and motives were both questionable, but his arguments on this point are unclear—they could be interpreted as challenging either the accuracy of the information provided by the CS or challenging the CS's reliability. *See* [Doc. 29, pp. 5–6]. Hewlett has presented no evidence challenging the accuracy of the information the CS provided to law enforcement, and he intends to challenge the CS's reliability—and thus attack the probable cause supporting the arrest, search, and

seizure—"it has long been the law in the Eleventh Circuit, and in the old Fifth Circuit, . . . 'that the Government need not disclose the identity of an informer when the sole purpose to be served is to attack the probable cause supporting a search warrant.'" *United States v. Cartwright*, 183 F.Supp.3d 1348, 1359 (M.D. Ga. Apr. 20, 2016) (collecting cases); *see United States v. Booker*, 131 F. App'x 234 (11th Cir. 2005) (affirming denial of defendant's motion to compel disclosure where informant's testimony would have been relevant only in establishing whether the government had probable cause to search the defendant's home, not to whether the defendant knowingly possessed contraband); *United States v. Pettaway*, 842 F. App'x 406 (11th Cir. 2021) (finding that the defendant's mere contention that disclosure would put him in a better position to test the veracity and basis of information the informant provided to law enforcement, which in turn supported an application for a search warrant, was insufficient to establish that an informant's testimony would support the defense); *cf. McCray v. State of Illinois*, 386 U.S. 300, 312 n.11 (1967) (recognizing that there was no probable cause issue in *Roviaro*, and thus the portion of that case addressing this issue was dictum).

At the hearing, defense counsel also argued that phone logs might undermine Detective Holcombe's testimony that the CS placed three phone calls to Hewlett, implying that Detective Holcombe's memory is inaccurate, the three phone calls didn't occur, or perhaps other phones were used. As noted above, defense counsel also impeached Detective Holcombe with his own testimony at a preliminary hearing on

February 24, 2024, pertaining to the CS's reliability. The Court observed Detective

Holcombe and found him credible. His testimony at the preliminary hearing and the

phone logs, whatever they might show or suggest, may assist a jury in assessing

Detective Holcombe's credibility at a later date, but they don't decide this matter.

However, because Hewlett has neither asserted a defense nor explained what

information the CS might have relevant to that defense, this factor weighs against

compelling disclosure. *See Kerris*, 748 F.2d 610.

### 3.    Government's Interest in Nondisclosure

Because Hewlett has failed to establish the importance of the CS's testimony, the

Court is not required to consider the third factor, "the government's interest in

nondisclosure." *Moore*, 611 F. App'x. at 575 (citation omitted); *see Kerris*, 748 F.2d at 614.

However, having considered the Government's Response and the parties' arguments at

the hearing, the Court agrees that because this this factor weighs against compelling

disclosure. [Doc. 33, p. 22]; *see United States v. Watley*, 318 F. App'x 871 (11th Cir. 2009)

(finding that the government had a strong interest in not disclosing its informant's

identity where it had used that informant for years, intended to continue using the

informant, and implied that disclosing the informant's identity would compromise

future drug investigations). Thus, the Court finds that all three factors weigh against

compelling disclosure and **DENIES** Defendant's Motion to Compel [Doc. 29].

## <u>CONCLUSION</u>

Accordingly, because Hewlett has not met his burden of persuading the Court to suppress the evidence seized during his arrest or the contents of the Nokia cellphone, the Court **DENIES** Defendant's Motion to Suppress [Doc. 28]. *See de la Fuente*, 548 F.2d at 533. Next, because Hewlett fails to establish that disclosure of the CS's identity would be "relevant and helpful to [his] defense" or "essential to a fair determination of [this] cause," the Court **DENIES** Defendant's Motion to Compel [Doc. 29]. *See Roviaro*, 353 U.S. at 60–62. This case is set for trial the week of December 2, 2024. *See* [Doc. 37]. The parties should be prepared for trial as this case is in first position.

**SO ORDERED**, this 17th day of October, 2024.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**